### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
EDWARD GREENE                 :    Civ. No. 3:21CV01513(SALM)
                              :
v.                            :
                              :
JAMES McMAHON, PAUL CHARETTE, :
and NATHAN SHEEHAN           :    July 25, 2024
                              :
------------------------------x
```

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Self-represented plaintiff Edward Greene brings this action pursuant to 42 U.S.C. §1983 against defendants James McMahon, Paul Charette, and Nathan Sheehan, ("defendants") who at all relevant times were police officers for the City of Waterbury Police Department. Greene asserts that defendants violated his rights under the Fourth Amendment to the United States Constitution; specifically, Greene brings claims for both false arrest and malicious prosecution. Defendants now move for summary judgment. For the reasons set forth below, the motion is granted in part and denied in part.

I.   **BACKGROUND**

Greene's claims arise from his detention and arrest by defendants and his subsequent prosecution.

1

On October 11, 2017, while defendants McMahon and Charette were "patrolling the area" near DeAngeli Market, they noticed a "white male standing at the hood of a car" for over twenty minutes, and decided to investigate. Doc. #115-4 at 1; see also Doc. #115-6 at 1; Doc. #115-11 at ¶¶6-7, 10.[1] The man and a woman in the car indicated that they were waiting for their friend, indicating Greene, who was in the market.

The record contains several conflicting accounts as to what happened next. In broad strokes, McMahon and Charette ordered Greene to exit the market, and conducted either a pat-down or search of his person. At some point, possibly before the initial pat-down or search, McMahon handcuffed Greene. The parties do not dispute that the following events transpired, though the order in which they occurred is unclear: (1) Green was handcuffed; (2) Greene was placed in the back of a locked police vehicle; (3) McMahon conducted a second pat-down or search of Green; and (4) McMahon found drugs on Greene's person. After the drugs were found, Greene was charged with controlled substance offenses and transported to police headquarters for processing. See Doc. #115-11 at ¶31; see also Doc. #99-2 at ¶28.

---

[1] Both Greene and defendants' submissions include multi-page attachments with native pagination that does not accord with the ECF pagination. Throughout this ruling, all page references are to the ECF pagination.

When Greene arrived for processing in the custody of McMahon and Charette, Sheehan was working the booking desk at the police station. During an intake search, Sheehan found a pistol inside of Greene's pants. Greene was charged with firearms offenses, in addition to the drug charges. Greene was detained.

Greene was tried in the Waterbury Superior Court; Defendants McMahon, Charette, and Sheehan all testified at the trial. See Doc. #118-1 at ¶¶16-17, 19, 21; see also Doc. #115-7 (McMahon trial testimony); Doc. #115-8 (Sheehan trial testimony); Doc. #115-9 (Charette trial testimony). On July 5, 2019, after the close of evidence but before the matter was submitted to the jury, the trial judge granted Greene's motion for a judgment of acquittal on all charges. See Doc. #115-10.[2] Greene was then released from custody, having been detained for nearly 21 months.

On November 12, 2021, Greene filed a civil complaint against defendants in their individual and official capacities, as well as against the Waterbury Police Department, alleging

---

[2] In granting the motion for acquittal, the trial judge noted the "level of inconsistences" in the State witnesses' descriptions of the events leading to Greene's arrest and prosecution. Doc. #115-10 at 6. She concluded: "[A]fter careful consideration of all the evidence, assessment of the credibility of the witnesses, the court finds that the state failed to present sufficient evidence for a rational trier of fact to find each crime proven beyond a reasonable doubt." Id. at 11.

violations of his constitutional rights. See Doc. #1 at 2-6. This Court granted Greene's motion to proceed in forma pauperis, see Doc. #6, and conducted an initial review of the complaint pursuant to 28 U.S.C. §1915. On initial review, the Court (1) dismissed Greene's claims against the Waterbury Police Department with prejudice; (2) dismissed Greene's claims against defendants in their official capacities without prejudice; and (3) allowed Greene to proceed on his claims against defendants in their individual capacities. See Doc. #7 at 7-8.

Greene filed an Amended Complaint, again asserting claims against defendants in their individual and official capacities, and adding claims against the City of Waterbury. See Doc. #8. The Court conducted another initial review, in which it (1) dismissed Greene's claims against the City of Waterbury without prejudice; (2) dismissed Greene's claims against defendants in their official capacities without prejudice; and (3) allowed Greene to proceed on his claims against defendants in their individual capacities alleging "Fourth and/or Fourteenth Amendment false arrest and malicious prosecution claims" pursuant to 42 U.S.C. §1983. Doc. #9 at 8. On January 11, 2022, Greene notified the Court that he elected to proceed on the

surviving claims rather than seek to amend his complaint again. See Doc. #10 at 1.[3]

Defendants move for summary judgment on both of Greene's claims, asserting (1) that there is no dispute of material fact that Greene's arrest and prosecution were supported by probable cause, and (2) that even if a dispute exists as to the presence of probable cause, they are entitled to qualified immunity.

## II.   **SUMMARY JUDGMENT STANDARD**

"Summary judgment is appropriate only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002) (quoting Fed. R. Civ. P. 56(c)). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A genuine dispute of material fact exists for summary judgment purposes where the evidence, viewed in the light most favorable to the

---

[3] The Court notes that in their Memorandum of Law, defendants state: "[T]he Second Amended Complaint is the operative pleading." Doc. #99-7 at 1. This is inaccurate; no Second Amended Complaint was filed in this action. The operative pleading is the Amended Complaint, as limited by the second Initial Review Order.

nonmoving party, is such that a reasonable jury could decide in that party's favor." Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 843 (2d Cir. 2013) (citation and quotation marks omitted). "The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists." Marvel Characters, Inc., 310 F.3d at 286.

In deciding a motion for summary judgment, the Court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citation and quotation marks omitted). "If there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006) (citation and quotation marks omitted).

The Court notes that Greene proceeds without counsel; self-represented "litigants receive special solicitude when confronted with motions for summary judgment." Kravitz v. Purcell, 87 F.4th 111, 119 (2d Cir. 2023) (citations and quotation marks omitted).  The Court therefore "liberally construe[s]" Greene's submissions and reads them "to raise the strongest arguments they suggest." Id. (citations and quotation marks omitted).

III. <u>**FALSE ARREST**</u>

    **A.   The Law of False Arrest**

     "In analyzing §1983 claims for unconstitutional false arrest, we have generally looked to the law of the state in which the arrest occurred." <u>Davis v. Rodriguez</u>, 364 F.3d 424, 433 (2d Cir. 2004). False arrest, under Connecticut law, "is the unlawful restraint by one person of the physical liberty of another." <u>Russo v. City of Bridgeport</u>, 479 F.3d 196, 204 (2d Cir. 2007) (citation and quotation marks omitted). A plaintiff claiming false arrest "must prove that his physical liberty has been restrained by the defendant and that the restraint was against his will, that is, that he did not consent to the restraint or acquiesce in it willingly." <u>Nodoushani v. Southern Conn. State Univ.</u>, 95 A.3d 1248, 1255 (Conn. App. 2014).[4]

     The existence of probable cause to arrest "is a complete defense to" a claim of false arrest. <u>Mara v. Rilling</u>, 921 F.3d 48, 73 (2d Cir. 2019); <u>see also</u> <u>Weyant v. Okst</u>, 101 F.3d 845, 852 (2d Cir. 1996) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action

---

[4] There is some debate as to whether favorable termination of the criminal charges is a required element of a claim for false arrest under Connecticut law. <u>See, e.g.</u>, <u>Miles v. City of Hartford</u>, 445 F. App'x 379, 383 (2d Cir. 2011) (summary order). There is no dispute that a judgment of acquittal was entered on all charges against Greene; accordingly, the Court need not resolve that question here.

for false arrest, whether that action is brought under state law or under §1983." (citation and quotation marks omitted)).

> The probable cause standard[s] under Connecticut law and federal law are substantively identical, requiring a showing that officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.

Washington v. Napolitano, 29 F.4th 93, 104-05 (2d Cir. 2022) (citation and quotation marks omitted); see also Mara, 921 F.3d at 69. "While probable cause requires more than mere suspicion, the line between mere suspicion and probable cause necessarily must be drawn by an act of judgment formed in light of the particular situation and with account taken of all the circumstances." State v. Eady, 733 A.2d 112, 118 (Conn. 1999) (citation and quotation marks omitted).

### B.   Defendants McMahon and Charette

The record before the Court is not clear as to the precise chain of events surrounding Greene's arrest. Although it is undisputed that McMahon and Charette saw Greene in the market, ordered him to exit the market, and asked him whether he knew the individuals near the white car, defendants have offered inconsistent descriptions of nearly everything that occurred after that point.

It appears that Greene may have been seized, for Fourth Amendment purposes, three distinct times. First, when McMahon

and Charette directed Greene to leave the store and conducted a
pat-down or search – during which he may or may not have been
handcuffed. Second, when Greene was handcuffed and placed in the
back of a locked cruiser, after which the record suggests he was
subject to a second pat-down or search. And third, when Greene
was transported to the police station, searched, and held in
custody.

In their Local Rule 56(a)1 statement, defendants set forth
a streamlined version of events that effectively elides the
contradictions in the record. Defendants assert that after
ordering Greene to exit the market, "McMahon detained and
handcuffed Mr. Greene for officer safety, and he conducted a pat
down search for weapons after the officers noticed Mr. Greene
continuously reaching down into his pants." Doc. #99-6 at ¶21.
Beginning with the very next paragraph, defendants assert that
McMahon felt an object on Greene's person, which McMahon
identified as drugs. See id. at ¶¶22-29. According to
defendants, Greene was "placed under arrest" and "was then
placed in the back of the police cruiser, where he was
transported to headquarters for processing." Id. at ¶31. Drawing
on this minimalist narrative, defendants argue that they are
entitled to summary judgment because "[o]nce it was found that
Greene was in possession of drugs on his person, defendant

officers then had probable cause for his arrest on the narcotic charge." Doc. #99-7 at 13 (sic).

However, in response to Greene's Local Rule 56(a)2 Statement of Additional Material Facts, defendants <u>admit</u> the following statement by Greene: "Upon <u>not finding nor retrieving any contraband on my person</u>, McMahon and Charette then placed me, handcuffed, in a locked Ford Crown Victoria (bearing the insignia of Waterbury Police Department), further restraining my freedom of movement." Doc. #118-1 at ¶4 (emphasis added).

<u>This admission alone</u> is sufficient to permit the matter to proceed to trial on the false arrest claim. This admission would allow a rational trier of fact to conclude that McMahon and Charette arrested Greene, by placing him handcuffed in a locked police vehicle, <u>before</u> having found any contraband on him during the initial pat-down or search, and therefore without probable cause.

This fact, and the sequence of events leading up to Greene's transport to the police station are, obviously, central to the case. Yet, defendants' Memorandum of Law, Local Rule 56(a)1 Statement, and supporting affidavits conflate and obscure the conflicting versions of events in McMahon's and Charette's various sworn statements. These statements are so internally inconsistent that they create further genuine questions of

material fact that preclude the grant of summary judgment in

their favor.

Specifically, McMahon and Charette have made conflicting

statements concerning (1) when Greene was first handcuffed, (2)

when Greene was placed in the back of the police car, and (3)

when the drugs were discovered. According to McMahon's sworn

statements, the handcuffing occurred <u>prior to</u> the first pat-down

or search:

> So, for officer safety, for his safety and the safety of
> the other people that were involved at the time, we put
> him in handcuffs, detained him for the time being to try
> and check for weapons.

Doc. #115-7 at 15.

> Greene was handcuffed by me when he exited the store. He
> lied to us once about knowing the two parties and was
> acting jumpy. I put him in handcuffs for officer safety
> and conducted the pat down.

Doc. #115-4 at 3.

But in Charette's Internal Affairs interview, Charette

stated:

> [Greene] was handcuffed by Officer McMahon . . . . <u>This
> was after he was patted down</u> . . . . This was when we
> was being detained. After he came outside and spoke with
> Officer McMahon and I and asked him if he was in the car
> that was after he reached in his pants and we asked him
> to come outside and kept reaching toward his pants. He
> was sweaty and we detained him after patting him down.

Doc. #115-6 at 1 (emphasis added).

Similarly, defendants have offered conflicting accounts as

to when the drugs were discovered. During Greene's criminal

trial, Charette testified that McMahon felt something in
Greene's pants, which Greene identified as "a little bit of
dope," during "the very first" pat-down, after Charette "asked
him to step out of the store." Doc. #115-9 at 11 (emphasis
added). Charette testified that "that's when he was placed into
handcuffs, put in the back of the cruiser." Id. But McMahon's
sworn statement to Internal Affairs -- like defendants'
admission to Greene's Rule 56(a)2 statement -- indicates that
drugs were discovered only after Greene had been handcuffed and
placed in the back of a locked police vehicle, and then removed,
and subjected to a second search or pat-down. During McMahon's
interview by Internal Affairs, he confirmed that "Greene was
detained in the back for the cruiser, and then removed prior to
the drugs being found," but that he had not included that fact
in his report. Doc. #115-4 at 2 (emphases added); see also id.
at 3 ("Greene was patted down twice . . . and the first time was
outside the store . . . and once again when we noticed him
fidgeting in the back seat of the cruiser. That time I felt the
object in his pants." (emphasis added)); 4 ("The second time I
removed him from our police cruiser . . . he pulled the drugs
out . . . .").

These statements create genuine disputes of material fact,
precluding an award of summary judgment for defendants, because

in light of these inconsistencies, the Court cannot determine the circumstances surrounding the various seizures.

In evaluating "any section 1983 claim predicated on the Fourth Amendment" the Court must "determine whether there has been a constitutionally cognizable seizure." Medeiros v. O'Connell, 150 F.3d 164, 167 (2d Cir. 1998). "A seizure of the person within the meaning of the Fourth and Fourteenth Amendments occurs when, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." Kaupp v. Texas, 538 U.S. 626, 629 (2003) (citation and quotation marks omitted). Greene was certainly "seized" at some point – certainly by the time he was handcuffed and placed in a locked police car; even if he had felt at liberty to ignore the police at that point, he physically could not have done so.

The next question is what type of seizure occurred, and when. If McMahon's and Charette's initial encounter with Greene constituted only an investigative pat-down incident to a "Terry" stop, then only reasonable suspicion was required to render that seizure reasonable. See Terry v. Ohio, 392 U.S. 1, 30 (1967). But if the initial detention constituted an arrest, probable cause was required. See, e.g., United States v. Fiseku, 915 F.3d 863, 870 (2d Cir. 2018). The point at which Greene was

13

handcuffed, and the circumstances surrounding the handcuffing, bear on this analysis. "We generally view handcuff use as a hallmark of a formal arrest." Id. at 871 (citation and quotation marks omitted); see also Grice v. McVeigh, 873 F.3d 162, 167 (2d Cir. 2017) ("Handcuffing . . . tends to show that a stop has ripened into an arrest."). Likewise, the timing of Greene's placement into the locked police car affects the analysis. See Ozga v. Elliot, 150 F. Supp. 3d 178, 190 (D. Conn. 2015) (finding that handcuffing and placement in the back of a police vehicle "easily suffice to establish a genuine issue of fact that [plaintiff] was seized within the meaning of the Fourth Amendment").

Defendants base their probable cause argument entirely on the discovery of contraband on Greene's person. See, e.g., Doc. #99-7 at 13 ("Once it was found that Greene was in possession of drugs on his person, defendant officers then had probable cause for his arrest on the narcotic charge."). But genuine disputes of material fact exist as to whether Greene was arrested before any contraband was discovered. These disputes make it impossible to determine whether probable cause would exist for that arrest. See, e.g., Weyant, 101 F.3d at 852-55 (holding that the district court erred in granting summary judgment where disputes of material fact existed as to the circumstances surrounding an arrest that would bear on probable cause).

14

Defendants McMahon and Charette are not entitled to summary judgment on Greene's false arrest claim, as it pertains to any seizure that occurred before the discovery of contraband on Greene's person. However, it is undisputed that at some point, McMahon and Charette did discover drugs on Greene's person.[5] Once drugs were found on Greene, defendants had probable cause to arrest him for controlled substance offenses. Accordingly, Greene's false arrest claim survives summary judgment only as to any seizure that occurred prior to the discovery of drugs on his person.

C.   **Defendant Sheehan**

There is no dispute that Sheehan was not present for or involved in the events surrounding Greene's detention and arrest in the community; he encountered him only upon his arrival at the police station. "[A] plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity

---

[5] At his deposition, Greene invoked his Fifth Amendment privilege against self-incrimination and refused to answer questions about whether he possessed any contraband on the date of his arrest. Defendants moved to compel that testimony. See Doc. #65-1 at 4-13. The Court appointed counsel to assist Greene in regard to the privilege issue. At a hearing on August 8, 2023, at which Greene was represented by counsel, the motion was resolved; Greene maintained the privilege, on the understanding that he could not assert in this action that he had not in fact possessed contraband on the date of the arrest. Greene therefore cannot dispute the defendants' assertion that contraband was found on his person.

under §1983." <u>Patterson v. County of Oneida</u>, 375 F.3d 206, 229
(2d Cir. 2004). Sheehan cannot be held liable for the actions of
McMahon and Charette.

By the time Sheehan had personal involvement with Greene,
drugs had in fact been found on Greene's person, and shortly
after Greene arrived at the police station, a gun was also
found. Thus, by the time Sheehan was involved, there was ample
probable cause to support the arrest and detention of Greene.
Accordingly, the motion for summary judgment is **GRANTED** as to
Sheehan only, on the claim of false arrest.

> **D.   Qualified Immunity**

Defendants argue that even if Greene's detention and/or
arrest was not supported by reasonable suspicion and/or probable
cause, McMahon and Charette are entitled to qualified immunity
on the false arrest claim.

It has been well-settled for many years that "[t]he right
not to be arrested without probable cause is a clearly
established right." <u>Lee v. Sandberg</u>, 136 F.3d 94, 102 (2d Cir.
1997); <u>see also</u> <u>Golino v. City of New Haven</u>, 950 F.2d 864, 870
(2d Cir. 1991). "Even where actual probable cause does not
exist, police officers may be entitled to qualified immunity
from a §1983 false arrest claim if their actions did not violate
'clearly established' rights or if 'arguable probable cause'
existed at the time of the arrest." <u>Guan v. City of New York</u>, 37

F.4th 797, 806 (2d Cir. 2022) (quoting Dancy v. McGinley, 843
F.3d 93, 106-07 (2d Cir. 2016)). "A police officer has arguable
probable cause if either (a) it was objectively reasonable for
the officer to believe that probable cause existed, or (b)
officers of reasonable competence could disagree on whether the
probable cause test was met." Washington v. Napolitano, 29 F.4th
93, 105 (2d Cir. 2022) (citation and quotation marks omitted).
Defendants bear the burden to show that they are entitled to
qualified immunity. See Vincent v. Yelich, 718 F.3d 157, 166 (2d
Cir. 2013).

"[I]f disputed material issues of fact preclude[] a
determination of probable cause, then summary judgment [on
qualified immunity grounds is] inappropriate." Gilles v.
Repicky, 511 F.3d 239, 247 (2d Cir. 2007); see also McClellan v.
Smith, 439 F.3d 137, 148-49 (2d Cir. 2006); Dufort v. City of
New York, 874 F.3d 338, 354 (2d Cir. 2017).

As noted, there are significant disputes of material fact
and inconsistencies in the record regarding the circumstances of
the seizure(s) of Greene, and the facts known to McMahon and
Charette when Greene was seized. Under one version of events
amply supported by the record – and indeed supported by
defendants' own admissions – McMahon and Charette conducted a
pat-down of Greene, found no contraband, and then handcuffed him
and locked him in the back of a police cruiser anyway. No

17

reasonable officer could believe that probable cause for arrest existed under those circumstances, and reasonable officers could not disagree on that question. Accordingly, defendants have not met their burden to establish that they are entitled to qualified immunity on this claim.

For these reasons, defendants' motion for summary judgment as to the false arrest claim against defendants McMahon and Charette is **DENIED**.


## IV.  MALICIOUS PROSECUTION

Defendants also move for summary judgment on Greene's malicious prosecution claim.

"To state a §1983 malicious prosecution claim a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law." Cornelio v. Connecticut, 32 F.4th 160, 178 (2d Cir. 2022) (citation and quotation marks omitted). "Under Connecticut law, a malicious prosecution claim requires proof that: '(1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice.'" Spak v. Phillips, 857 F.3d

458, 461 n.1 (2d Cir. 2017) (quoting <u>Brooks v. Sweeney</u>, 9 A.3d 347, 357 (Conn. 2010)); <u>see also</u> <u>Bhatia v. Debek</u>, 948 A.2d 1009, 1017-18 (Conn. 2008).

As is true of a claim for false arrest, the lack of probable cause is an essential element of a claim for malicious prosecution, and the existence of probable cause to initiate the prosecution is a complete defense. <u>See</u> <u>Cornelio</u>, 32 F.4th at 178; <u>see also</u> <u>Golino</u>, 950 F.2d at 866-67 (2d Cir. 1991); <u>Giannamore v. Shevchuk</u>, 947 A.2d 1012, 1017 (Conn. App. Ct. 2008). "Probable cause exists when the facts and circumstances within the knowledge of the officer and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that a felony has been committed." <u>State v. Nowell</u>, 817 A.2d 76, 85 (Conn. 2003) (citation and quotation marks omitted). "[I]n the absence of exculpatory facts which became known after an arrest, probable cause to arrest is a complete defense to a claim of malicious prosecution." <u>D'Angelo v. Kirschner</u>, 288 F. App'x 724, 726 (2d Cir. 2008) (summary order) (citing <u>Johnson v. Ford</u>, 496 F. Supp. 2d 209, 214 (D. Conn. 2007)).

After the discovery of the drugs and firearm on Greene's person, it is undisputed that defendants had probable cause to prosecute him on the drug and firearm charges. The record does not indicate that any defendant received exculpatory information

that would abrogate that probable cause. Cf. Johnson, 496 F. Supp. 2d at 214. Because the existence of probable cause is a complete defense, Greene's claim fails. Accordingly, defendants' motion for summary judgment on Greene's malicious prosecution claim against all three defendants is **GRANTED**.

## V.    CONCLUSION

For the reasons set forth herein, defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part.

The motion is **GRANTED** as to all claims against defendant Sheehan. The clerk is directed to terminate Sheehan as a defendant in this matter.

The motion is **GRANTED** as to Greene's malicious prosecution claim against defendants McMahon and Charette.

The motion is **DENIED** as to Greene's false arrest claim against defendants McMahon and Charette. This claim will proceed to trial.

The matter will be referred to a Magistrate Judge for settlement purposes.

The Court finds that counsel is necessary to effectively manage the preparation and conduct of a trial in this matter. Accordingly, the Clerk of Court is respectfully directed to appoint counsel from the Court's voluntary pro bono panel to represent Greene.

After pro bono counsel has filed an appearance, the Court will issue a Joint Trial Memorandum Order.

It is so ordered this 25th day of July, 2024, at Bridgeport, Connecticut.

____/s/ Sarah A. L. Merriam____
HON. SARAH A. L. MERRIAM
UNITED STATES CIRCUIT JUDGE
Sitting by Designation
